IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRITTNEY TUCKER,<br><br>   Plaintiff,<br><br>v.<br><br>SAFE GUARD PRODUCTS INTERNATIONAL, LLC,<br><br>   Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Brittney Tucker ("Plaintiff" or "Ms. Tucker"), by and through undersigned counsel, and files this Complaint for Damages, showing the Court as follows:

### NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant Safe Guard Products International, LLC's ("Defendant") violations of her rights under the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et. seq.* ("Section 1981").

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1981.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §1981, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is an African-America citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

At all times relevant, Defendant Safe Guard Products International, LLC was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant may be served with process by delivering a copy of the summons and complaint to its corporate registered agent, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

## **FACTUAL ALLEGATIONS**

7.

Ms. Tucker began working for Defendant on August 5, 2019, as an Account Specialist.

8.

There were two other Account Specialists that worked with Ms. Tucker; Tyra Cooper (African-American) and Chris Dixon (white).

9.

During the course of Ms. Tucker's employment with Defendant, Mr. Dixon was given preferential treatment over Ms. Tucker and Ms. Cooper.

10.

Mr. Dixson was invited to client events and outings.

11.

Mr. Dixon was asked to go to client lunches, while Ms. Tucker and Ms. Cooper had to stay at their desks.

12.

Mr. Dixson was given first choice over time off.

13.

When Ms. Tucker asked for time off, her manager, Michelle Gregory (white), would approve it only if it did not overlap with Mr. Dixon's plans.

14.

Mr. Dixon was allowed to leave early.

15.

Mr. Dixson was not required to answer the phones or be logged into the phone que.

16.

Despite all being in the same position, Ms. Tucker and Ms. Cooper were made responsible for making sure that Mr. Dixon did not miss anything, even though he received the same email communications as they did.

17.

When Mr. Dixon went on vacation, his work was split between Ms. Tucker and Ms. Cooper. However, when they were away from work, they did not receive the same type of coverage.

18.

During morning meetings, Ms. Gregory would single out Ms. Tucker and Ms. Cooper regarding their work but did not do the same to Mr. Dixon.

19.

In or about January 2020, after Mr. Dixon expressed the job being too much, the Account Director offered to move him to Claims without changing his pay, because he was "one of the good ol' boys."

20.

In April 2020, Ms. Tucker complained to Ms. Gregory about the preferential treatment of Mr. Dixson.

21.

Specifically, Ms. Tucker asked Ms. Gregory why she always asked Mr. Dixon what he thought about things as if he was a supervisor, and never asked her or Ms. Cooper.

22.

After Ms. Tucker's complaint, Ms. Gregory began to retaliate against Ms. Tucker.

23.

Ms. Gregory began harassing Ms. Tucker through emails, claiming that Ms. Tucker was not doing things correctly.

24.

Prior to Ms. Tucker's complaint, her work performance had never been called into question.

25.

During a meeting in June, after Ms. Tucker requested time off, Ms. Gregory turned to Mr. Dixon and asked if he was ok with it.

26.

Ms. Tucker again spoke up about why Mr. Dixon was given preferential treatment.

27.

On June 11, 2020, Ms. Tucker formally complained about the ongoing race discrimination and retaliation to Human Resources.

28.

Instead of the formal complaint improving the situation, the retaliation by Ms. Gregory only became worse.

29.

Ms. Gregory falsely claimed that clients had been complaining about Ms. Tucker, but when asked by HR for evidence of the same, she was unable to provide anything to substantiate her allegations.

30.

Ms. Tucker continued to complain about Ms. Gregory and the Team Director, Sharon Nobraga (white), but no action was taken to stop their behavior.

31.

Instead, on August 27, 2020, Defendant terminated Ms. Tucker.

32.

Defendant terminated Ms. Tucker for unprofessional conduct based on Ms. Gregory's false claim that Ms. Tucker had hung up on her.

33.

This proffered explanation is false, as Ms. Tucker was terminated in retaliation for her numerous complaints of race discrimination and retaliation.

34.

Defendant failed to investigate the numerous complaints.

35.

Defendant failed to take any corrective action to stop Ms. Gregory and Ms, Nobraga of ongoing race-based discrimination and retaliation.

36.

Although Defendant Safe Guard Products International, LLC purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

37.

Others outside of the Ms. Tucker's protected class, i.e. Ms. Tucker's white co-workers, were treated differently.

## **CLAIMS FOR RELIEF**

## **COUNT I:  VIOLATION OF 42 U.S.C. § 1981**

38.

Plaintiff re-alleges paragraphs 7-37 as if set forth fully herein.

39.

Defendant subjected Plaintiff to discrimination and harassment on the basis of her race (African-American).

40.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. section 1981.

41.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely effect Plaintiff's status as an employee, because of her race.

42.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected her psychological and physical well being.

43.

As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to her emotional health, and has lost back pay and front pay.

44.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

45.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

## **COUNT II: VIOLATION OF 42 U.S.C. § 1981 RETALIATION**

46.

Plaintiff re-alleges paragraphs 7-37 as if set forth fully herein.

47.

Plaintiff engaged in protected conduct when she complained about race-based discrimination.

48.

Defendant subjected Plaintiff to adverse employment actions after Plaintiff engaged in protected conduct.

49.

There was a causal connection between the protected conduct and the adverse action.

50.

As a direct and proximate result of these actions, Plaintiff has suffered damages.

51.

Defendant, therefore, is liable for the damages caused proximately resulting from its retaliation.

## COUNT THREE:  RATIFICATION

52.

Plaintiff re-alleges paragraphs 7-37 as if set forth fully herein.

53.

Defendant knew, or in the exercise of ordinary diligence, should have known of the propensity of Ms. Gregory to engage in race-based conduct toward other employees, and Plaintiff in particular.

54.

Having knowledge of Ms. Gregory's offensive conduct, Defendant retained and allowed her to continue to harass its employees.

55.

As a result, Defendant has ratified the offensive race-based conduct and is subject to liability for that conduct.

**WHEREFORE**, Plaintiff judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant have violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which he may be entitled.

Respectfully submitted the 12th day of January, 2021.

                                  **BARRETT & FARAHANY**

                                  */s/ Adian R. Miller*
                                  Adian R. Miller
                                  Georgia Bar No. 794647

1100 Peachtree Street, Suite 500
Atlanta, GA 30309
(404) 214-0120
adian@justiceatwork.com